**In re Stanley Vincent URBAN, Debtor.**

No. 06–60045–13.

United States Bankruptcy Court, D. Montana.

Jan. 31, 2007.

Stuart R. Whitehair, Bozeman, MT, for Debtor.

### *MEMORANDUM of DECISION*

RALPH B. KIRSCHER, Bankruptcy Judge.

In this Chapter 13 bankruptcy proceeding, the Chapter 13 Trustee, Robert G. Drummond, filed an Objection to Property Claimed as Exempt and a Motion for Certification of Claim of Unconstitutionality on March 27, 2006, challenging the constitutionality of 11 U.S.C. § 522(b)(3). The Trustee's motion for certification of claim of unconstitutionality was granted by Order entered April 11, 2006. Subsequently, the United States of America, by and through the United States Department of Justice ("United States"), filed an uncontested motion to intervene on June 29, 2006, which motion was granted by Order entered that same date. The Chapter 13 Trustee and Matthew J. Troy, attorney for the United States, proceeded to file a stipulation on July 3, 2006, setting forth the following agreed facts:

1. The Debtor, Stanley Vincent Urban, filed his Chapter 13 Bankruptcy in the District of Montana on February 14, 2006.

2. Concurrently with the filing of his Bankruptcy Petition, the Debtor filed bankruptcy schedules. The Debtor's Schedule C listed property claimed as exempt under Montana Law. The Debtor's exemptions were listed on Schedule C as follows:

Household Goods $600.00

Wearing Apparel $600.00

Jewelry $600.00

Retirement Account $3,522.87

Guns and Sporting Goods $600.00

Motor Vehicle—2005 Dodge Stratus $2,500.00

Homestead Declaration $100,000.00

Interest in Insurance Policy $4,000.00

3. On March 16, 2006, the Chapter 13 Trustee filed an objection to the Debtor's claim of exemptions (Docket No. 11). The Trustee's objection alleged that 11 U.S.C. § 522(b)(3) required that the Debtor claim exemptions under the California law because he had not been domiciled within the State of Montana for the entire 730–day period preceding the date of the filing of his Bankruptcy Petition.

4. In response to the objection filed by the Trustee, the Debtor filed a Notice of Amendment, amending Schedule C to claim his exemptions under California law (Docket No. 12). The Debtor's Amended Schedule C claimed exemptions as follows:

Household Goods $450.00

Wearing Apparel $450.00

Jewelry $1,150.00

Retirement Account $3,522.87

Guns and Sporting Goods $925.00

Motor Vehicle—2005 Dodge Stratus $2,755.00

Homestead Declaration $50,000.00

Interest in Insurance Policy $9,300.00

5. The parties stipulate and agree that the Debtor properly claimed his exemptions under California law as required by 11 U.S.C. § 522(b)(3).

6. On March 27, 2006, the Trustee filed another objection to the claim of exemptions (Docket No. 15). The Trustee's objection alleged that the statute requiring that the Debtor claim California exemptions violated the uniformity requirement appearing in the United States Constitution at Article 1, Section 8, Clause 4 (Docket No. 15).

7. Contemporaneous with the filing of his objection to exemptions, the Trustee filed a Motion for Certification of Claim of Unconstitutionality as required by 28 U.S.C. § 2403 and Montana LBR 9013–5.

8. The Trustee's Motion for Certification was granted by this Court on April 11, 2006 (Docket No. 22). The matter was certified to Alberto Gonzales, Attorney General of the United States and William Mercer, United States Attorney for the District of Montana the same day (Docket No. 23).

9. The matter was set for hearing on July 6, 2006, in Butte, Montana. The parties stipulate that the Court shall use these stipulated facts as the factual basis underlying the Trustee's constitutional challenge to 11 U.S.C. § 522(b)(3).

10. The parties stipulate and agree that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Venue is appropriate pursuant to 28 U.S.C. § 1408.

Both the Trustee and the United States filed briefs in support of their respective positions on July 13, 2006, and August 1, 2006, respectively, and the Trustee filed a supplemental response to the United State's brief on August 9, 2006. The matter is thus ready for decision and for the reasons set forth in this Memorandum of Decision, the Court finds that the Trustee's constitutional challenge lacks merit and that as drafted, the 730–day residency period set forth in 11 U.S.C. § 522(b)(3) is constitutional.

■ Bankruptcy courts have exclusive jurisdiction over a debtor's property, wherever located, and over the estate. 28 U.S.C. § 1334(e). *See also Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 126 S.Ct. 990, 996, 163 L.Ed.2d 945 (2006) ("Critical features of every bankruptcy proceeding are the exercise of exclusive jurisdiction over all of the debtor's property, the equi-

table distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts.") Moreover, it is well-settled that the commencement of a case, whether voluntary, joint or involuntary, under any of the Chapters in Title 11 of the United States Code, creates an estate which consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In the context of Chapter 7 bankruptcies, once property is deemed an asset of the estate, it remains as such and may be administered by the Trustee for the benefit of the creditors unless the debtor is entitled to remove, and in fact affirmatively does remove, either a portion of the asset, or the entire asset, from the bankruptcy estate through the exemption process. *In re Binns,* 9 Mont. B.R. 386, 387 (Bankr.D.Mont.1991). In the context of Chapter 13 bankruptcies, the allowance or disallowance of an exemption can effect the amount a debtor must contribute to his or her Chapter 13 plan. As explained by a leading treatise on bankruptcy:

A fundamental component of an individual debtor's fresh start in bankruptcy is the debtor's ability to set aside certain property as exempt from the claims of creditors. Exemptions of property, together with the discharge of claims, lets the debtor maintain an appropriate standard of living as he or she goes forward after the bankruptcy case.

4 COLLIER ON BANKRUPTCY, ¶ 522.01, p. 522–15 (15th ed. rev.).

Allowing exemptions in bankruptcy cases serves the purpose of assisting debtors to obtain their "fresh start" after filing a bankruptcy case. As articulated by the Ninth Circuit Court of Appeals, the Bankruptcy Code attempts to balance the interests of creditors, whose debts may be discharged, and debtors, who are attempting to receive a fresh start. *In re Beezley,* 994 F.2d 1433 (9th Cir.1993). As noted in the Trustee's brief, the United States Supreme Court recognized the application of exemption law under section 522(b) when it stated:

An estate in bankruptcy consists of all the interests in property, legal and equitable, possessed by the debtor at the time of filing, as well as those interests recovered or recoverable through transfer and lien avoidance provisions. An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor. Section 522 determines what property a debtor may exempt. Under § 522(b), he must select between a list of federal exemptions (set forth in § 522(d)) and the exemptions provided by his State, "unless the State law that is applicable to the debtor ... specifically does not so authorize," § 522(b)(1)—that is, unless the State "opts out" of the federal list. If a State opts out, then its debtors are limited to the exemptions provided by state law. Nothing in subsection (b) (or elsewhere in the Code) limits a State's power to restrict the scope of its exemptions; indeed, it could theoretically accord no exemptions at all.

Property that is properly exempted under § 522 is (with some exceptions) immunized against liability for prebankruptcy debts. § 522(c). No property can be exempted (and thereby immunized), however, unless it first falls *within* the bankruptcy estate. Section 522(b) provides that the debtor may exempt certain property "from property of the estate"; obviously, then, an interest that is not possessed by the estate cannot be exempted.

*Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991).

As previously mentioned, the Bankruptcy Code allows the debtor to prevent the distribution of certain property by claiming it as exempt. *Taylor v. Freeland & Kronz,* 503 U.S. 638, 642, 112 S.Ct. 1644, 1647, 118 L.Ed.2d 280 (1992). The Bankruptcy Code provision that establishes the exemption process, and which is at the heart of the issue in this case, namely, 11 U.S.C. § 522(b)(3), reads:

> [A]n individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection.

> \* \* \*

Such property is—

> \* \* \*

> (3) Property listed in this paragraph is

> (A) subject to subsections (*o*) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located at a single State for such 730–day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730–day period or for a longer portion of such 180–day period than in any other place[.]

Montana has opted-out of the federal exemption scheme set forth at 11 U.S.C. § 522. *See* 11 U.S.C. § 522(b) and MONT. CODE ANN. ("MCA") § 31–2–106. Pursuant to MCA § 31–2–106(1), an individual debtor is entitled to exempt from execution of judgment certain property, including that property as identified in MCA § 25–13–609. Similarly, California has also opted out of the federal exemption scheme appearing at 11 U.S.C. § 522. The pertinent California statute provides:

> Pursuant to the authority of paragraph (1) of subsection (b) of Section 522 of Title 11 of the United States Code, the exemptions set forth in subsection (d) of Section 522 of Title 11 of the United States Code (Bankruptcy) are not authorized in this state.

CAL.CIV.PRO.CODE § 703.130 (2006). However, as reflected in the stipulated facts filed by the Trustee and the United States, the exemption laws of Montana and California are different. As a result, Debtor's claimed exemptions under California law of $18,552.87, excluding Debtor's claimed homestead exemption of $50,000, prevents distribution of property valued at $6,130 that would not have otherwise been protected under Montana law.[1]

The facts in this case are straightforward and not in dispute: Debtor currently resides in Montana; did not reside in Montana for the full 730 day period prior to commencing his bankruptcy proceeding; and was "domiciled" in California within the meaning of § 522(b)(3).

In support of this claim of unconstitutionality, the Trustee maintains that § 522(b)(3) does not satisfy the require-

---

1. The allowable homestead exemption available to debtors under Montana law is $100,000. Debtor's home is valued in Debtor's Schedule A at $153,000 and is encumbered by a secured obligation in the sum of

$122,000. Accordingly, Debtor's equity in his homestead property of $31,000 is, in this case, equally protected under California law and Montana law.

ment of geographical uniformity; creates a class consisting of one debtor in this District; and defeats the policy underlying the uniformity requirement. The Trustee asserts that his instant constitutional challenge arises because of the enactment of the Bankruptcy Abuse and Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23 (2005) ("BAPCPA"), and urges the Court to deny Debtor's exemptions claimed under California law and instead allow the Debtor to utilize the federal exemption scheme found at 11 U.S.C. § 522(d).

As mentioned above, the Trustee asserts that the instant claim of unconstitutionality came about following enactment of BAPCPA. BAPCPA was signed into law by President George W. Bush on April 20, 2005, and with certain exceptions, is applicable to cases commenced after October 16, 2005. The instant bankruptcy case was commenced on February 14, 2006, and is thus governed by the Bankruptcy Code, as amended by BAPCPA.

Prior to October 17, 2005, a debtor's domicile for the 180–day period preceding the bankruptcy petition date, or the place during that period in which the debtor was domiciled the longest, determined which state's exemptions were applicable. Former 11 U.S.C. § 522(b)(2)(A). The Trustee argues that the constitutionality of the 180–day period for determining the applicable exemption law was not previously challenged because the 180–day period set forth in former 11 U.S.C. § 522(b)(2)(A) tracked the 180–day period for determining venue found at 28 U.S.C. § 1408. Thus, the applicable exemption law and venue were always found in the same state.

To curb a perceived abuse and discourage particular debtors from moving, in contemplation of bankruptcy, to states with more generous exemption laws, Con-

gress, through BAPCPA, extended the 180–day domicile requirement to 730 days. 11 U.S.C. § 522(b)(3)(A). As noted in a well-recognized bankruptcy treatise:

> The combined effect of the longer 730–day period (plus the additional 180–day period) for determining the applicable exemption law and the unchanged 180–day period for determining venue is that the law of the debtor's domicile, for the purposes of section 522, may be different from the law of the forum[.]

4 COLLIER ON BANKRUPTCY, ¶ 522.06, p. 522–41 (rev. 15th ed.2005).

Initially, after reading the recent cases of *In re Jewell*, 347 B.R. 120 (Bankr. W.D.N.Y.2006), and *In re Underwood*, 342 B.R. 358 (Bankr.N.D.Fla.2006), the Court thought resolution of the Trustee's constitutional question would be quite simple. Several opt-out states, like Colorado as discussed in *Jewell* and *Underwood, supra*, have some type of residency requirement tied to their exemption laws. For instance, Montana law, at MCA § 25–13–606, limits the availability of Montana exemptions to residents of this State: "A resident of this state is entitled to the exemptions provided in this part." Thus, upon a cursory review of the Trustee's objection, it would appear that if a debtor did not live in the forum state for a period of two years, federal law would preempt state law, and federal exemptions would apply.

However, the instant case reveals that the resolution of the Trustee's constitutional challenge is not quite so simple. The Debtor in the case *sub judice* previously lived in California and under § 522(b)(3)(A), the State law applicable to Debtor is California law. Interestingly, California does not have a residency requirement attached to its exemption provisions. For instance, as the case of *In re Arrol*, 170 F.3d 934 (9th Cir.1999), illus-

trates, a person living in Michigan for roughly two months, but filing bankruptcy in California, was entitled to utilize California's automatic homestead exemption to protect his dwelling in Michigan where the debtor satisfied the requirements of CAL. CIV.PRO.CODE § 704.710(c), in that the debtor had continuously resided in the dwelling [located in Michigan] from the time that the creditor's lien had attached until a court's determination that the exemption applied. The Eighth Circuit Court of Appeals reached a similar result in *In re Drenttel*, 403 F.3d 611 (8th Cir. 2005), where debtors filing for protection under the Bankruptcy Code in Minnesota were allowed to use the Minnesota exemption provisions to protect their newly acquired home in Arizona.

Consequently, this Court is required to more closely examine the merits of the Trustee's challenge. First, the Trustee points out that, before BAPCPA, both the venue provision of 28 U.S.C. § 1408 and the exemption provisions set forth in § 522(b) looked to the longer portion of the 180 day period prior to the commencement of the bankruptcy case. According to the Trustee, the continuity between 28 U.S.C. § 1408 and § 522(b) provided geographic uniformity. However, following BAPCPA, the venue statute still utilized a look back period of 180 days, while the exemption provisions were amended to require a debtor to have lived in the filing district for two years prior to commencement of a case to claim that state's exemptions.

The Court is not persuaded by the Trustee's continuity argument or his narrow interpretation of 28 U.S.C. § 1408. Prior to enactment of BAPCPA, one court explained:

> Unlike the bankruptcy venue statute, 28 U.S.C. § 1408, which refers to domicile, residence, principal place of business, or principal assets, Bankruptcy Code § 522(b)(2)(A) of the Bankruptcy Code refers to only "domicile."

*In re Arrol*, 207 B.R. 662, 664 (Bankr.N.D.Cal.1997)(citing *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29 (1989)). As the foregoing reflects, and as correctly noted by the United States, the potential for conflict between 28 U.S.C. § 1408 and § 522(b) is not a new issue, in theory or practice, and could have arisen prior to BAPCPA because proper venue is not governed exclusively by a debtor's domicile. In discussing the potential for conflict between 28 U.S.C. § 1408 and § 522(b), the United States argues in its brief:

> In fact, this very situation has arisen in numerous pre-BAPCPA cases, running as far back as 1943. *See In re Armitage*, 54 F.Supp. 768, 769 (W.D.Pa.1943). The cases show that applying the pre-BAPCPA rule that permitted a debtor to claim exemptions of the state in which he or she was domiciled for the greater portion of the 180 day period prior to the commencement of the case led to confusion among the lower courts. *See In re Morad*, 323 B.R. 818, 823–25 (1st Cir. BAP 2005) (Massachusetts court denied Florida exemptions because debtor failed to prove Florida domicile for requisite period—not clear what other exemptions might apply); *Armitage*, 54 F.Supp. at 769 (Pennsylvania applied its own exemptions to debtor where debtor found to be domiciled for the longer part of six months in Pennsylvania rather than Ohio); *In re Tanzi*, 287 B.R. 557, 560–61 (Bankr.W.D.Wash.2002) (Court rejected claim of Florida exemptions, but ordered further proceedings to determine whether California or Washington exemptions would apply), *aff'd*, 297 B.R. 607 (9th Cir. BAP 2003); *In re*

*Young,* 276 B.R. 683, 687 (Bankr. M.D.Fla.2002) (Debtors who had residences in both Florida and Missouri and other business contacts in Kansas were denied any exemptions); *In re Sparfven,* 265 B.R. 506, 519–21 (Bankr.D.Mass. 2001) (Court rejected Florida exemptions but suggested that Rhode Island exemptions probably would apply); *In re Lusiak,* 247 B.R. 699, 703–04 (Bankr. N.D.Ohio 2000) (Ohio court applied Michigan exemption law, permitting debtor to elect federal exemptions because Michigan is not an opt-out state); *In re Lordy,* 214 B.R. 650, 661–63 (Bankr.S.D.Fla.1997) (Florida case applied New Jersey exemptions); *In re Halpin,* 1994 WL 594199 *1–2 (Bankr.D.Idaho 1994) (not reported) (Idaho court held that Ohio exemptions would apply if the debtor can prove domicile in Ohio via further proceedings); *In re Schulz,* 101 B.R. 301, 301–02 (Bankr.N.D.Fla.1989) (Florida debtor residing out of state entitled to claim federal exemptions); *In re Lockwood,* 6 B.R. 623, 623 (Bankr.S.D.Fla.1980) (Florida case applied Texas exemptions).

Among these decisions, several courts did exactly what the Trustee complains of here—they permitted the debtor to claim exemptions under a state different from that where the court was sitting. *See, e.g., Lusiak,* 247 B.R. at 702 (Ohio case, Michigan exemptions); *Lordy,* 214 B.R. at 663 (Florida case, New Jersey exemptions); *Lockwood,* 6 B.R. at 623 (Florida case, Texas exemptions); *see also Tanzi,* 287 B.R. at 560–61 (further proceedings to determine whether California exemptions applied to Washington case); *Halpin,* 1994 WL 594199 *2 (fur-

ther proceedings to determine whether Ohio exemptions applied in Idaho case).

While the Court does not agree with the Trustee's narrow reading of 28 U.S.C. § 1408, the Court also does not agree with the United States' interpretation of many of the cases cited in the above passage. For instance, in *In re Armitage,* 54 F.Supp. 768 (W.D.Pa.1943), venue was apparently proper in Pennsylvania and the debtor's exemptions were similarly found to be governed by Pennsylvania law. Thus, the exemption laws of the forum state, Pennsylvania, governed. Similarly, in *In re Morad,* the debtor filed for protection under the Bankruptcy Code in Florida, but the case was subsequently transferred to Massachusetts. *In re Morad,* 323 B.R. 818 (1st Cir. BAP 2005). There, the Bankruptcy Appellate Panel ("BAP") for the First Circuit Court of Appeals, examined extensively the difference between domicile and residence:

> A debtor is considered domiciled in a state for the purposes of § 522(b) if the evidence establishes that (1) the debtor was physically present in the state for the greater part of the 180–day period preceding the petition date than he was present in any other place; and (2) the debtor intends to remain in the state indefinitely. *See In re Lowenschuss,* 171 F.3d 673, 683 (9th Cir.1999). Thus, "domicile" means more than mere residence.[2] A domicile is that place where a person has a permanent home and an intention of returning. *See Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989); *see also In re Marsico,* 278 B.R. 1 (Bankr.D.N.H.2002); *In re Sparfven,* 265 B.R. 506, 518 (Bankr.

---

**2.** "Although domicile and residence are often loosely used as synonymous terms, the specified reference to each in the Code indicates an intention to maintain a legal distinction

between them." Lawrence P. King, 3 COLLIER ON BANKRUPTCY ¶ 522.06 (15th ed. rev.2002) (footnotes omitted).

D.Mass.2001). Domicile is established by "physical presence in a place ... with ... intent to remain there." *Sparfven*, 265 B.R. at 518 (citing *Holyfield*, 490 U.S. at 48, 109 S.Ct. 1597, 104 L.Ed.2d 29). "Mere physical removal to another jurisdiction without the requisite intent is insufficient to effect a change of domicile." Lawrence P. King, 3 COLLIER ON BANKRUPTCY ¶ 522.06 (15th ed. rev.2002). *In re Morad*, 323 B.R. at 823. Considering the facts and the debtor's credibility, the First Circuit BAP affirmed the bankruptcy court's denial of the debtor's claimed exemption under Florida law. As in *Armitage*, the forum court in *Morad* did not permit the application of the non-forum state's exemption laws.

Along these same lines, the case of *In re Tanzi*, 287 B.R. 557, involves unique circumstances in that prior to March 19, 2002, the debtors' primary residence was located in the state of Washington. The debtors also owned a home in California, which was sold in mid-March of 2002. In late March of 2002, a creditor filed an involuntary petition against the debtors and shortly thereafter, in April of 2002, the debtors purchased a home in Florida. The debtors filed their bankruptcy petition in Washington, but sought to "claim the entire value of their Florida residence as exempt ($985,000), alleging that they [were] entitled to use the more liberal Florida state exemptions." *In re Tanzi*, 287 B.R. at 558. While acknowledging that the debtors were "entitled to claim an exemption in the Florida residence, but only to the extent exempt under the law of the domiciliary state", the bankruptcy court for the Western District of Washington prohibited the debtors from protecting their assets under Florida law because the debtors had not been domiciled in Florida for a longer portion of the 180–day period preceding the filing of the involuntary petition, reasoning: "Unlike residence, domi-

cile is established by 'physical presence in a place in connection with a certain state of mind concerning one's intent to remain there.' *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29 (1989)." *In re Tanzi*, 287 B.R. at 561.

Finally, in *In re Sparfven*, 265 B.R. 506, the debtor filed his bankruptcy petition in Florida, but the case was subsequently transferred to Rhode Island. The debtor in *Sparfven* nevertheless sought to claim a Florida homestead exemption in property located in Florida and owned by the debtor and his estranged spouse. Like the courts in *Morad* and *Tanzi*, the court in *Sparfven* examined the domiciliary requirements of § 522(b)(2), and based upon the following facts, concluded that the debtor was domiciled in Rhode Island rather than Florida:

> It is clear from Mr. Sparfven's actions from January of 1998 until the commencement of the bankruptcy case that he did not intend to change his Rhode Island domicile in favor of Florida. In particular, the Debtor continued travel to and from Rhode Island; he maintained business, personal and professional ties to Rhode Island; and he maintained residences in Rhode Island. In short, he sporadically occupied the Vero Beach property. The Court finds Mr. Sparfven's decision to continue doing business in Rhode Island to be especially significant. Although he did some work from his home in Florida, Anton Noll's operations remained the same before and after the Debtor's asserted change of domicile. Although the Debtor testified that he looked for office space in Vero Beach, he did not move the business to Florida and continued to travel frequently to Rhode Island to supervise Anton Noll's operations.

*In re Sparfven*, 265 B.R. at 519–20.

Nevertheless, at least two cases cited by the United States dispel the Trustee's ar-

gument that 28 U.S.C. § 1408 and § 522(b) were consistent prior to BAPCPA. Particularly, the case of *In re Schulz* involved a debtor who moved from Florida and established his residence in Wisconsin one month prior to his petition date. In *Schulz*, the debtor was presumably required to file his bankruptcy petition in Florida under 28 U.S.C. § 1408. However, because the debtor had established a new residence in Wisconsin, he was no longer a resident of Florida and was thus prohibited from claiming Florida exemptions, which are only available to residents of Florida. In that situation, the bankruptcy court allowed the debtor to utilize the federal exemption scheme. The result in *In re Schulz*, a pre-BAPCPA case, is thus similar to the results reached in *In re Jewell*, 347 B.R. 120, and *In re Underwood*, 342 B.R. 358, both post-BAPCPA cases.

The case in *In re Lusiak*, *supra*, presented a different factual scenario. In that case, the debtor moved from her home in Ohio to Michigan to care for her ailing mother. The debtor filed her bankruptcy petition in Ohio and filed along therewith a motion for change of venue to Ohio, which was granted. Utilizing Michigan exemption law, which did not include an opt out of the federal exemption provisions of § 522, the debtor sought to claim a homestead exemption under the federal exemption scheme in her house in Ohio, which was then occupied by a renter. While the bankruptcy court in Ohio did not take issue with the debtor's desire to use Michigan's exemption laws nor did the court disagree with debtor's contention that she intended to eventually return to her home in Ohio, the court nonetheless denied the debtor's claimed exemption on the basis that:

[T]he Debtor has declared through her bankruptcy petition, and her schedule of exemptions contained therein, that her

domicile is in the State of Michigan; however, domicile, for purposes of claiming an exemption under § 522, is defined as "actual residence with a present intention to remain there." *In re Levy*, 221 B.R. 559, 566 (Bankr.S.D.Fla.1998). Thus, by definition, a debtor claiming to be domiciled in Michigan would not have the necessary intent to return to Ohio so as to satisfy the residency requirement of § 522(d)(1). *See In re Lowenschuss*, 202 B.R. 305, 315 (Bankr.D.Nev.1996) *aff'd* 171 F.3d 673 (9th Cir.1999) (location of debtor's claimed domicile determines a debtor's right to an exemption even if the parties stipulate otherwise).

*In re Lusiak*, 247 B.R. at 703.

Likewise, in *Lordy*, the debtors filed their bankruptcy petition in Florida and also sought to claim a homestead exemption utilizing Florida's exemption laws. After examining the facts, the court in *Lordy* determined that from their petition date of May 9, 1996, the debtors had not lived in Florida for the longer portion of the 180–day period set forth in § 522(b)(2):

Peter Lordy spent approximately 72 days of the 180 days preceding the Debtors' petition date in Florida, while Virginia Lordy, spent approximately 41 days in Florida. During their limited time in Florida, the Debtors' did not join any churches, clubs, unions and other organizations nor did the Debtors establish relationships with local professionals other than their current bankruptcy attorney. Peter Lordy testified that both his psychologist and psychiatrist were located in New Jersey; the Debtors' attorney, Timothy Neumann, Esquire, was located in New Jersey; and the Debtors' accountant was located in New York.

*In re Lordy*, 214 B.R. at 663. The court in *Lordy* was also persuaded by the fact that

"Debtors' did not ship their personal belongings to Florida until March 22, 1996, and the items were immediately placed in storage upon reaching Florida." Finally, the *Lordy* Court was particularly persuaded by the fact that as late as March 22, 1996, the debtors' business and place of employment were located in New Jersey, not Florida, and that,

> as late as April 12, 1996, Virginia Lordy was still employed by and received payroll checks from Direct. The Court finds it incredulous that the Debtors' would assert that they were domiciled in Florida while they were working for and receiving pay checks from their New Jersey company and employer which was, at that time, operating under Chapter 11.

*Id.* Given the debtors' lack of domicile in Florida, the court in *Lordy* allowed the debtors to claim the exemptions to which they were entitled under New Jersey law. *Id.*

As illustrated by *In re Lusiak* and *In re Lordy*, BAPCPA did not create a choice of law problem—at the most, BAPCPA made it more likely that the issue would arise by extending the domicile period for purposes of claiming exemptions while continuing to permit debtors to commence proceedings in any state where they own a residence, among other choices of venue.

■ The Court's focus, therefore, is whether the amendments made to § 522(b)(3) by BAPCPA, which requires the extraterritorial application of another state's exemption laws, violates the uniformity requirement that appears in the United States Constitution at Article I, Section 8, Clause 4. In the case *sub judice*, the Trustee does not argue that Congress has unconstitutionally delegated to the states the power to opt out of the federal exemption scheme. Indeed, it is well-settled that the right of the states to opt out of the federal exemptions set forth in 11 U.S.C. § 522 does not violate the uniformity requirement. *In re Sullivan,* 680 F.2d 1131 (7th Cir.1982); *Stinson v. Pitrat (In re Stinson )* 36 B.R. 946 (9th Cir. BAP 1984). This case presents a question of first impression because the Trustee challenges that portion of § 522 which requires that another state's exemption laws be used in Montana. In support of his challenge, the Trustee relies heavily on language from *Hanover Nat'l Bank of the City of New York v. Moyses,* 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1902), in support of a bright line rule that federal bankruptcy legislation is unconstitutional unless a trustee can reach the debtor's assets in bankruptcy to the same extent those assets are subject to the legal process of the forum state outside of bankruptcy.

In an article entitled, *The History of the Bankruptcy Laws in the United States,* published at 3 AM. BANKR.INST. L.REV. 5 (1995), author Charles Jordan Tabb provides a quite thorough history of bankruptcy in the United States.[3] As explained by Mr. Tabb, the framers of the Constitution sought to address the disparity of insolvency law among the states and thus drafted the United States Constitution to grant Congress the power "to establish . . . uniform laws on the subject of bankruptcies throughout the United States." U.S.

---

3. For example, the allowance of basic exemptions came about as a result of the Bankruptcy Act of 1841. Debtors were later permitted to elect between state exemption laws and federal exemption laws by virtue of the Bankruptcy Act of 1867. The Bankruptcy Act of 1898 later restricted debtors to only state law exemptions. As explained by Mr. Tabb at 3 AM. BANKR.INST. L.REV. 5, p. 24–25, "[i]n 1902, the Supreme Court held that this delegation to the states did not run afoul of the Bankruptcy Clause for the mandate of uniform laws."

Const. art. I, § 8, cl. 4. As explained by the United States Supreme Court, in *Railway Labor Executives' Ass'n v. Gibbons,* 455 U.S. 457, 472, 102 S.Ct. 1169, 1178, 71 L.Ed.2d 335 (1982):

> Prior to the drafting of the Constitution, at least four States followed the practice of passing private Acts to relieve individual debtors. Nadelmann, On the Origin of the Bankruptcy Clause, 1 Am.J.Legal Hist. 215, 221–223 (1957). Given the sovereign status of the States, questions were raised as to whether one State had to recognize the relief given to a debtor by another State. See *Millar v. Hall,* 1 Dall. 229, 1 L.Ed. 113 (Pa.Sup. Ct.1788); *James v. Allen,* 1 Dall. 188, 1 L.Ed. 93 (Pa.Ct. Common Pleas 1786). Uniformity among state debtor insolvency laws was an impossibility and the practice of passing private bankruptcy laws was subject to abuse if the legislators were less than honest. Thus, it is not surprising that the Bankruptcy Clause was introduced during discussion of the Full Faith and Credit Clause. The Framers sought to provide Congress with the power to enact uniform laws on the subject enforceable among the States. *See* Nadelmann, *supra,* at 224–227. Similarly, the Bankruptcy Clause's uniformity requirement was drafted in order to prohibit Congress from enacting private bankruptcy laws. *See* H. Black, Constitutional Prohibitions 6 (1887) (States had discriminated against British creditors). The States' practice of enacting private bills had rendered uniformity impossible.[4]

As recognized in *Moyses,* 186 U.S. at 188, 22 S.Ct. 857, an oft-cited case and the case on which the Trustee heavily relies, the United States Supreme Court held early on that the uniformity requirement appearing in the Constitution is geographic:

> The laws passed on the subject must, however, be uniform throughout the United States, but that uniformity is geographical, and not personal, and we do not think that the provision of the act of 1898 as to exemptions is incompatible with the rule.

Recognizing that the uniformity requirement is geographic, the Supreme Court in *Moyses* applied the requirement by holding that a bankruptcy statute passes constitutional muster if the bankruptcy law treats the trustee, as a hypothetical judicial lien creditor, in the same fashion in the bankruptcy case as he would be treated outside of the case under state law.[5] The Court stated:

> We concur in this view, and hold that the system is, in the constitutional sense, uniform throughout the United States, when the trustee takes in each state whatever would have been available to the creditor if the bankrupt law had not been passed. The general operation of the law is uniform although it may result in certain particulars differently in different states.

*Moyses,* 186 U.S. at 190, 22 S.Ct. 857. While the extraterritorial application of a state's law was not at issue in the *Moyses* case, the Supreme Court nevertheless recognized that the uniformity provision could allow different results in different

---

**4.** The Framers' intent to achieve uniformity among the Nation's bankruptcy laws is also reflected in the Contract Clause. Apart from and independently of the Supremacy Clause, the Contract Clause prohibits the States from enacting debtor relief laws which discharge the debtor from his obligations, *Sturges v. Crowninshield,* 4 Wheat. 122, 197–199, 4

L.Ed. 529 (1819), unless the law operates prospectively. *Ogden v. Saunders,* 12 Wheat. 213, 6 L.Ed. 606 (1827).

**5.** The bankruptcy trustee has the standing of a hypothetical judicial lien creditor. 11 U.S.C. § 544 (2005).

states. Particularly, the *Moyses* Court recognized that, as a hypothetical judicial lien creditor, the trustee could reach certain property of the debtor. A statute that would allow the bankruptcy trustee to reach the same property of the debtor, in or out of bankruptcy, complies with the uniformity requirement. Recognizing that all contracts are interpreted under existing state laws and that no creditor could recover more from the debtor than the "unexempted part of his assets" in or out of bankruptcy, the Court recognized the geographic application of the uniformity provision and stated:

Mr. Chief Justice Waite expressed the same opinion in *Re Deckert*, 2 Hughes, 183[, 7 F.Cas. 334 (C.C.E.D.Va.1900)]. The Chief Justice there said: "The power to except from the operation of the law property liable to execution under the exemption laws of the several states, as they were actually enforced, was at one time questioned, upon the ground that it was a violation of the constitutional requirement of uniformity, but it has thus far been sustained, for the reason that it was made a rule of the law to subject to the payment of debts under its operation only such property as could by judicial process be made available for the same purpose. This is not unjust, as every debt is contracted with reference to the rights of the parties thereto under existing exemption laws, and no creditor can reasonably complain if he gets his full share of all that the law, for the time being, places at the disposal of creditors. One of the effects of a bankrupt law is that of a general execution issued in favor of all the creditors of the bankrupt, reaching all his property subject to levy, and applying it to the payment of all his debts according to their respective priorities. It is quite proper, therefore, to confine its operation to such property as other legal process could

reach. A rule which operates to this effect throughout the United States is uniform within the meaning of that term, as used in the Constitution."

*Moyses,* 186 U.S. at 189, 22 S.Ct. 857.

Relying on the language found in *Moyses,* the Trustee argues that § 522(b)(3) has the effect of taking away the Trustee's interests in property of the Debtor that the Trustee would otherwise take under Montana law by "other legal process." The Trustee posits that he is treated in a different fashion because of the application of § 522(b)(3) as enacted by BAPCPA. Outside of bankruptcy, the Trustee in this case would enjoy the benefits and the burdens of the application of Montana exemption law. However, following the enactment of § 522(b)(3), the Trustee is now burdened by the requirement that he use the California exemption law, which law treats both the Debtor and the Trustee differently than such parties would be treated under Montana law.

■ Although this Court shares the Trustee's concern regarding the application of § 522(b) and appreciates the added burden that the Trustee familiarize himself with the exemption laws of other states, the Court finds that § 522(b)(3), as amended by BAPCPA, does not violate the uniformity requirement mandated by the United States Constitution. In particular, this Court is not as persuaded as the Trustee by the Supreme Court's statement in *Moyses* that "the system is, in the constitutional sense, uniform throughout the United States, when the trustee takes in each State whatever would have been available to the creditors if the bankruptcy law had not been passed." *Moyses,* 186 U.S. at 190, 22 S.Ct. 857. Rather, additional language in the *Moyses* decision, coupled with language contained in later decisions issued by the United States Su-

preme Court, convinces this Court that the above-cited single sentence does not create the rigid rule urged by the Trustee.

Indeed, as explained in *Gibbons,* 455 U.S. at 469, 102 S.Ct. 1169, "[t]he uniformity requirement is not a straightjacket that forbids Congress to distinguish among classes of debtors, nor does it forbid Congress from recognizing that state laws do not treat commercial transactions in a uniform matter." Moreover, the Supreme Court in *Moyses* quoted with approval Justice Catron's description of the scope of the Bankruptcy Clause:

> "In considering the question before me, I have not pretended to give a definition (but purposely avoided any attempt to define) the mere word 'bankruptcy.' It is employed in the Constitution in the plural, and as part of an expression, 'the subject of bankruptcies.' The ideas attached to the word in this connection are numerous and complicated; they form a subject of extensive and complicated legislation; of this subject, Congress has general jurisdiction; and the true inquiry is-to what limits is that jurisdiction restricted? I hold, it extends to all cases where the law causes to be distributed the property of the debtor among his creditors; this is its least limit. Its greatest is the discharge of a debtor from his contracts. And all intermediate legislation, affecting substance and form, but tending to further the great end of the subject-distribution and discharge-are in the competency and discretion of Congress.["]

*Moyses,* 186 U.S. at 186, 22 S.Ct. 857.

Additionally, in the case of *Stellwagen v. Clum,* 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507 (1918), the Supreme Court discussed the constitutionality of a provision granting to the trustee the rights and powers of a creditor provided by the state law of the debtor's residence. In upholding Congress' grant of power to the trustee to utilize state statutes for the benefit of creditors, even though results may vary from state to state, the Court recognized:

> Notwithstanding this requirement as to uniformity the bankruptcy acts of Congress may recognize the laws of the state in certain particulars, although such recognition may lead to different results in different states. For example, the Bankruptcy Act recognizes and enforces the laws of the states affecting dower, exemptions, the validity of mortgages, priorities of payment and the like. Such recognition in the application of state laws does not affect the constitutionality of the Bankruptcy Act, although in these particulars the operation of the Act is not alike in all the states. *Hanover National Bank v. Moyses,* 186 U.S. 181, 188, 189, 190, 22 Sup.Ct. 857, 46 L.Ed. 1113. True it is that general assignments for the benefit of creditors are acts of bankruptcy, Act of 1898, § 3, clause 4, and since the amendment of 1903, 32 Stat. 797, a receivership of an insolvent debtor with a view to distribution of his property for the benefit of creditors will have the like effect. 1 Loveland on Bankruptcy (4th ed.) § 153. In such cases the bankruptcy proceedings, taken within four months, displace those in the state court and terminate the jurisdiction of the latter. *Randolph v. Scruggs,* 190 U.S. 533, 537 [23 Sup.Ct. 710, 47 L.Ed. 1165]; *In re Watts & Sacks,* 190 U.S. 1, 31, [23 Sup.Ct. 718, 47 L.Ed. 933]. But it does not follow that state statutes intended to avoid conveyances actually or constructively fraudulent and thereby to promote the equal distribution of insolvent estates may not be availed of by the trustee. Section 70e of the Bankruptcy Act provides:

> > "The trustee may avoid any transfer by the bankrupt of his property

which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication. Such property may be recovered or its value collected from whoever may have received it, except a bona fide holder for value. For the purpose of such recovery any court of bankruptcy as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

*Stellwagen*, 245 U.S. at 613, 38 S.Ct. 215.

█ Finally, the case of *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 161, 95 S.Ct. 335, 367, 42 L.Ed.2d 320 (1974), provides compelling instruction on the issue now before the Court. In the *Regional Rail Reorganization Act* litigation, creditors of bankrupt railroads challenged the Regional Rail Reorganization Act of 1973 that was passed to reorganize eight major railroads in the northeast and midwest regions of the country. The creditors argued that the statute violated the uniformity provision of the Bankruptcy Clause because it operated only in a single statutorily defined region. In rejecting the creditors' constitutional challenge, the Supreme Court explained that while the creditors' "argument has a certain surface appeal[, it] is without merit because it overlooks the flexibility inherent in the constitutional provision." *Id.*, 419 U.S. at 158, 95 S.Ct. 335. Indeed, "[t]he uniformity provision does not deny Congress power to take into account differences that exist between different parts of the country, and to fashion legislation to resolve geographically isolated problems." *Id.*, 419 U.S. at 159, 95 S.Ct. 335 The fact that the Regional Rail Reorganization Act of 1973 applied

to a geographically defined class did not render it unconstitutional.

In reaching its decision in *Regional Rail Reorganization Act*, the Supreme Court also considered the *Head Money Cases [Edye v. Robertson]*, 112 U.S. 580, 5 S.Ct. 247, 28 L.Ed. 798 (1884), which case discussed the concept of uniformity found in other Constitutional provisions. In the *Head Money Cases*, the Supreme Court recognized that in imposing a head tax on persons coming into this country, Congress could choose to tax those persons who immigrated via steam or sail vessels through the ports, but not those "noncitizen passengers entering this country by rail or other inland mode of conveyance." *Regional Rail*, 419 U.S. at 160, 95 S.Ct. 335. In upholding the tax at issue, the Supreme Court wrote:

> The tax is uniform when it operates with the same force and effect in every place where the subject of it is found. The tax in this case ... is uniform and operates precisely alike in every port of the United States where such passengers can be landed.

*Regional Rail Reorganization Act*, 419 U.S. at 160–61, 95 S.Ct. 335, *quoting Edye v. Robertson* the *Regional Rail Reorganization Act Cases ("Head Money Cases")*, 112 U.S. at 594, 5 S.Ct. 247. The statute at issue in this case, like the tax imposed in the *Head Money Cases*, applies uniformly to all persons seeking protection under the Bankruptcy Code.

Following the instruction of the Supreme Court, as articulated in the *Regional Rail Reorganization Act Cases, Stellwagen, Moyses* and the *Head Money Cases*, this Court concludes that the instant statute challenged by the Trustee, namely § 522(b)(3), applies uniformly throughout the United States to all debtors who seek protection under the Bankruptcy Code within 730 days of moving

from one State to another. The Court will, therefore, enter a separate order providing as follows:

IT IS THEREFORE ORDERED that 11 U.S.C. § 522(b)(3), as amended by the Bankruptcy Abuse and Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23 (2005), does not violate the uniformity requirement found in the United States Constitution, Article 1, Section 8, Clause 4.