**Emile E. MORAD, Debtor.**

**Emile E. Morad, Appellant,**

v.

**Stella Xifaras and Barbara Xifaras, Appellees.**

**BAP No. 04–019.**
**Bankruptcy No. 02–15186–JBR.**

United States Bankruptcy Appellate Panel for the First Circuit.

April 6, 2005.

---

Herbert Weinberg, Esq., on brief for Appellant.

Philip N. Beauregard, Esq., and Michael Franco, Esq., on brief for Appellee, Stella Xifaras.

Before LAMOUTTE, CARLO and KORNREICH, U.S. Bankruptcy Appellate Panel Judges.

PER CURIAM.

The debtor, Emile E. Morad ("Morad"), appeals from the May 10, 2004, order of the bankruptcy court sustaining the Second Amended Objection by Stella Xifaras and Barbara Xifaras to Debtor's Schedule

C Claimed Exemptions, as amended by their later Objection to Amended Schedule C as to IRAs and Further Objection Respecting Life Insurance Policy. At issue in this appeal is whether Morad was domiciled in Florida during the 180–day period preceding the bankruptcy filing in order to claim the benefit of Florida state exemptions. For the reasons set forth below, we affirm.

## BACKGROUND

This contested matter is one chapter in an ongoing dispute between Morad and creditor Stella Xifaras ("Xifaras"), who was awarded a judgment exceeding $550,000 against Morad in 1996 by the Bristol County Superior Court.[1] The relevant background is as follows.

On January 23, 2002, Morad filed a voluntary Chapter 11 petition in the U.S. Bankruptcy Court for the Southern District of Florida. The case was subsequently converted to Chapter 7 on April 22, 2002. Thereafter, upon Xifaras' motion, Morad's case was transferred to the U.S. Bankruptcy Court for the District of Massachusetts ("bankruptcy court").

In his Amended Schedule C, Morad claimed exemptions under Florida law regarding certain real and personal property, including a house in Hollywood, Florida, four IRAs, and two Prudential Whole Life Insurance Policies. Xifaras filed various objections to the exemptions claiming

that Morad could not claim the state exemptions because he was not domiciled in Florida during the requisite 180–day time period. After an evidentiary hearing,[2] the bankruptcy court issued an order on May 10, 2004, sustaining Xifaras' objections, with the exception of the objection to Morad's life insurance policies, which was waived on the record. Morad filed a timely appeal of that order.

## JURISDICTION

■ A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.),* 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). An interlocutory order " 'only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" *Id.* (quoting *In re American Colonial Broad. Corp.,* 758 F.2d 794, 801 (1st Cir.1985)). A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. *See In re George*

1. Morad is an attorney who practiced law in Massachusetts who represented Xifaras in several matters. In 1994, Xifaras sued Morad in Bristol County Superior Court claiming breach of contract, breach of fiduciary duty and violation of Mass. Gen. Laws. ch. 93A. On August 28, 1996, the state court issued a Memorandum of Decision finding in favor of Xifaras and awarding monetary damages against Morad. The state court judgment is the basis of Xifaras' claim against Morad in this bankruptcy case.

2. The first day of trial took place on January 7, 2004 before Judge Kenner. However, Judge Kenner subsequently transferred the case to Judge Rosenthal due to her impending retirement. Accordingly, Judge Rosenthal continued the trial on March 29, 2004. Finally, on May 10, 2004, after hearing closing arguments, Judge Rosenthal made findings of fact and conclusions of law on the record.

*E. Bumpus, Jr. Constr. Co.*, 226 B.R. 724 (1st Cir. BAP 1998).

Generally, an order sustaining an objection to a debtor's claimed exemptions is a final order. *See Fiffy v. Nickless (In re Fiffy)*, 293 B.R. 550, 553 (1st Cir. BAP 2003); *Howe v. Richardson (In re Howe)*, 232 B.R. 534, 535 (1st Cir. BAP 1999) ("Although other issues may remain for resolution in a case after the determination of Morad's claimed exemptions, orders granting or denying exemptions are appealable as final orders."), *aff'd*, 193 F.3d 60 (1st Cir.1999); *see also McNeilly v. Geremia (In re McNeilly)*, 249 B.R. 576, 579 (1st Cir. BAP 2000) (appeal of bankruptcy court's order sustaining trustee's objection to debtor's claimed exemption in tenancy by the entirety property).

### STANDARD OF REVIEW

■ Appellate courts reviewing an appeal from the bankruptcy court generally apply the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law. *See T I Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719–20, n. 8 (1st Cir. 1994). Generally, a debtor's entitlement to a bankruptcy exemption involves a legal question and is reviewed *de novo*. *See, e.g., Howe*, 232 B.R. at 535 (*de novo* review of bankruptcy court's order sustaining objections to debtor's exemptions where no factual issues were disputed on appeal). However, the question of domicile—the legal status that lies at the heart of this case—is generally considered a mixed

question of law and fact. *See Valentin v. Hospital Bella Vista*, 254 F.3d 358, 365 (1st Cir.2001); *see also Coury v. Prot*, 85 F.3d 244, 251 (5th Cir.1996) (citing cases). Such a determination should be reviewed under the "clearly erroneous" standard since the application of the law requires an inquiry that is essentially factual. *See id.*

### DISCUSSION

#### I. Issue and Burden of Proof

■ The sole issue in this case is whether Morad was domiciled in Florida during the 180–day period preceding the petition date in order to claim the benefit of the Florida Homestead Exemption under Article 10, § 4(a)(1) of the Florida Constitution [3] and to protect his IRA accounts under Fla. Stat. Ann. § 222.21. An exemption claim is prima facie valid, absent a timely objection. *See* § 522(*l*); *McNeilly*, 249 B.R. at 579. As the objecting party, Xifaras had the burden of proving that Morad was not entitled to exempt the real and personal property at issue. *See* Fed. R. Bankr.P. 4003(c); *McNeilly*, 249 B.R. at 579.

#### II. Applicable Law

##### A. Section 522 of the Bankruptcy Code

Section 522 of the Bankruptcy Code allows a debtor to exempt certain property from the bankruptcy estate that would otherwise be available for distribution to creditors, and § 522(b) allows debtors to choose between the federal bankruptcy exemptions listed in § 522(d) or the exemp-

---

**3.** Article 10X, § 4(a)(1) of the Florida Constitution provides, in pertinent part:

There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for

the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person: (1) a homestead ...

Fla. Const. Art X, § 4(a)(1).

tions provided by their state of residence, unless the state has "opted out" of the federal exemption scheme. *See* 11 U.S.C. § 522. Additionally, an individual may exempt "any property that is exempt under Federal law ... or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place." 11 U.S.C. § 522(b)(2)(A).[4]

If a debtor chooses the option of claiming exemptions under state law, the applicable state exemption law is that of the state in which the debtor's domicile has been located for the 180 days immediately preceding the filing of the bankruptcy petition, or for a longer portion of this period than in any other place. *See* Lawrence P. King, 3 *Collier on Bankruptcy* ¶ 522.06 (15th ed. rev.2002); *see also DeNadai v. Preferred Capital Mkts.*, 272 B.R. 21, 36 n. 13 (D.Mass.2001). Claiming that he was "domiciled" in Florida during the requisite 180–day period preceding his bankruptcy filing, Morad sought to use Florida state laws to exempt a home he owned in Hollywood, Florida, and his IRA accounts.

### B. Domicile v. residence

 A debtor is considered domiciled in a state for the purposes of § 522(b) if the evidence establishes that (1) the debtor was physically present in the state for the greater part of the 180–day period preceding the petition date than he was present in any other place; and (2) the debtor intends to remain in the state indefinitely. *See In re Lowenschuss*, 171 F.3d 673, 683 (9th Cir.1999). Thus, "domicile" means more than mere residence.[5] A domicile is that place where a person has a permanent home and an intention of returning. *See Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989); *see also In re Marsico*, 278 B.R. 1 (Bankr. D.N.H.2002); *In re Sparfven*, 265 B.R. 506, 518 (Bankr.D.Mass.2001). Domicile is established by "physical presence in a place ... with ... intent to remain there." *Sparfven*, 265 B.R. at 518 (citing *Holyfield*, 490 U.S. at 48, 109 S.Ct. 1597). "Mere physical removal to another jurisdiction without the requisite intent is insufficient to effect a change of domicile." Lawrence P. King, 3 *Collier on Bankruptcy* ¶ 522.06 (15th ed. rev.2002).

 When a person has more than one residence, intent is particularly relevant. *See Sparfven*, 265 B.R. at 518 (citing *In re Hodgson*, 167 B.R. 945, 951 (D.Kan. 1994)). Intent is established by considering all circumstances, including the conduct and statements of the person whose domicile is questioned. *Id.* As the Massachusetts bankruptcy court has stated:

4. Specifically, § 522(b)(2)(A) provides:
Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection ... Such property is ...
(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immedi-

ately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place. . . .
11 U.S.C. § 522(b)(2)(A).

5. "Although domicile and residence are often loosely used as synonymous terms, the specified reference to each in the Code indicates an intention to maintain a legal distinction between them." Lawrence P. King, 3 *Collier on Bankruptcy* ¶ 522.06 (15th ed. rev.2002) (footnotes omitted).

824

"Intent is proven by the actual state of facts and not what one declares them to be." [*In re*] *Orso*, 219 B.R. [402]at 416 [(Bankr.M.D.La.1998)]. Statements of intent are not controlling. [*In re*] *Ring*, 144 B.R. [446]at 449 [(Bankr.E.D.Mo.1992)]. "One's testimony with regard to his intention is of course to be given full and fair consideration, but is subject to the infirmity of any self-serving declaration, and may frequently lack persuasiveness or even be contradicted or negatived by other declarations and inconsistent acts." *Murphy*, 314 U.S. at 456, 62 S.Ct. 303.

*Id.* Thus, the determination of domicile must be made on a case by case basis upon consideration of all the evidence. *Id.* at 519.

▮ The United States Supreme Court has directed courts to consider several factors in determining domicile, including:

(1) current residence; (2) voting registration and voting practices; (3) location of spouse and family; (4) location of personal or real property; (5) location of brokerage and bank accounts; (6) memberships in churches, clubs, unions and other organizations; (7) location of a person's physician, lawyer, accountant, dentist and stockbroker; (8) place of employment or business; (9) driver's license and automobile registration; and (10) payment of taxes.

*Id.* at 518 (citing *District of Columbia v. Murphy*, 314 U.S. 441, 455–58, 62 S.Ct. 303, 86 L.Ed. 329 (1941)).

Applying these principles to the facts of the present case, the bankruptcy court found that Morad was not entitled to claim the benefit of the Florida homestead exemption because he was not domiciled in Florida for the entire 180–day pre-petition period and was not domiciled in Florida for the longer portion of that period than in any other place.

## III. Analysis

### A. Physical presence in Florida

▮ Morad argues that he was physically present in Florida for the majority of the 180–day period. At trial, Morad testified that during the 180–day period immediately preceding the bankruptcy filing, he spent approximately 90 days in Florida, 30 days in Massachusetts and 71 days in New Hampshire. However, courts do not simply perform a mathematical test of adding up days of physical presence to determine domicile. Rather, domicile means actual presence plus a present *intent* to remain there.

### B. Morad's intent

The bankruptcy court found that the question of where Morad was domiciled for the greater part of the 180–day period preceding the bankruptcy filing was answered ·by his own testimony at trial. Morad's testimony at trial in both the bankruptcy court and during a fraudulent conveyance trial in state court supports the bankruptcy court's conclusion that Morad did not change his domicile to Florida until at least November 2, 2001.

At trial before Judge Kenner on January 7, 2004, Morad acknowledged that he was not domiciled in Florida before November 2, 2001:

Q. Sir, when did you first establish a domicile in Florida?

A. I would have to say late 2001. I was a resident prior to that.

Q. When did you establish a domicile in late 2001?

A. I can't answer that question.

Q. Was it before or after November 2 of 2001?

A. It's close to that date. I can't tell you the date.

Q. Close before or close after?

A. After.

Q. So you first established a domicile in Florida after November 2, 2001.

A. I was a resident before that.

Morad confirmed that testimony at trial on March 29, 2004.

Moreover, at a state court fraudulent conveyance trial in September 2001, Morad testified that he did not have a homestead in Florida and that he did not intend to move to Florida until after he closed his law practice in Massachusetts.

Q. Do you claim that this Florida property is exempt as a Homestead?

A. No.

Q. Do you intend to claim any exemption for the Florida property as a Homestead?

A. I don't think there's such a thing in Florida that you claim, I'm not aware of it.

Q. Mr. Morad, as you sit here today, you've been sworn in. Can you tell us whether or not you intend to claim an exemption for the property as your Homestead, the Florida property?

A. If I move to Florida and there's such a thing, then I would change it. Yes, I would go to Florida, if I intend to close my practice and leave here for good, I will go to Florida.

Q. And claim that Florida is a Homestead?

A. If it's available, but I don't think it's available.

Q. It's your testimony that you haven't made a decision on that?

A. How can you make a decision on something you don't know?

Based on the foregoing testimony, the bankruptcy court did not err in concluding that Morad did not change his domicile to Florida until at least November 2, 2001.

Despite the foregoing, Morad argues that the bankruptcy court failed to give sufficient weight to evidence demonstrating that he formed the requisite intent to change his domicile to Florida in May of 1997, after dividing certain real property with his brother. He claims that he took actions beginning in 1997 that show his intent to change his domicile to Florida, including spending time in Florida, winding down his law practice in Massachusetts, registering to vote in Florida in 1997, filing tax returns as a resident of Florida starting in 1997, serving as a juror in Florida, and maintaining a Florida driver's license since 1997.

Even if the foregoing claims are true, there was sufficient evidence in addition to Morad's own testimony to support the bankruptcy court's conclusion that although Morad maintained a residence in Florida, he was not domiciled there prior to the petition date. For example, during the relevant period, Morad continued to own property in Massachusetts and had a law practice there. On May 22, 1996, Morad filed a Declaration of Homestead pursuant to Massachusetts law on property located at 1340 Drift Road, Westport, Massachusetts, and did not execute a Revocation of Homestead until November 2, 2001. Although Morad produced tax returns from 1996 and 1997 showing his Florida address, his tax returns for 1996, 1997 and 1998 stated that he worked as an attorney at "460 County Street, New Bedford, MA," evidencing that he still maintained an active law practice in Massachusetts.

Moreover, although Morad obtained a Florida driver's license in 1997, he continued to have a Massachusetts driver's li-

cense, suggesting that he did not intend to change his domicile at that time. In addition, although Morad often used his Florida address in pleadings and other documents filed and recorded prior to the petition date, Morad also used a Massachusetts address on documents filed in Bristol County Superior Court in 1998, in answers to interrogatories dated December 3, 1998, and in a February 10, 1999 deposition. Morad's bank accounts were in Massachusetts, his doctors were in Massachusetts, and his wife worked for a mortgage broker in Massachusetts.

Accordingly, although Morad argues that he intended Florida to be his domicile beginning in 1997, his self-serving statements of intent are not controlling, *see Murphy*, 314 U.S. at 456, 62 S.Ct. 303, and the events and circumstances during the relevant time period are inconsistent with his statement of intent. He took numerous actions prior to the filing of his petition that are contrary to his claim of a Florida domicile during that period. Xifaras introduced sufficient evidence to refute Morad's self-serving assertion that he changed his domicile from Massachusetts to Florida in May 1997, and the bankruptcy court did not err in weighing the evidence.

### C. Morad's credibility

As a final point, it is important to note that the bankruptcy court questioned Morad's credibility, stating:

> The debtor is an experienced attorney. His testimony that he did not understand the difference between a domicile and a residence strains credulity. The words have very different meanings beginning with the notion that a person may have many residences but only one domicile. The evidence submitted by Mr. Morad is not sufficient to convince me that he did not understand the dif-

ference between his Massachusetts domicile and his Florida residence. Nor was the evidence sufficient to establish Mr. Morad was domiciled in Florida during the requisite pre-bankruptcy period.

As noted above, the question of domicile in this case turns on Morad's intent. We must accord even greater deference to the bankruptcy court's findings on questions of intent "because a determination concerning . . . intent depends largely upon an assessment of the credibility and demeanor of the debtor." *See Palmacci v. Umpierrez*, 121 F.3d 781, 785 (1st Cir.1997); *see also* Fed. R. Bankr.P. 8013 ("Due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.").

> Questions of credibility are solely for the trier of fact . . . who has the best opportunity to observe the verbal and nonverbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements as well as confused or nervous speech patterns in contrast with merely looking at the cold pages of an appellate record.

*In re D'Agnese*, 86 F.3d 732, 734 (7th Cir.1996). Based on the facts of this case, we cannot conclude that the bankruptcy court erred in weighing Morad's credibility (or lack thereof) in determining whether he intended to be domiciled in Florida during the 180–day period prior to the bankruptcy filing.

### *CONCLUSION*

Based on the evidence, the bankruptcy court did not err in concluding that Morad was not a domiciliary of Florida for the requisite 180–day period preceding his bankruptcy filing so that he could claim exemptions under Florida state law for his real and personal property. Consequent-

ly, we affirm the bankruptcy court's May 10, 2004, order.