IN RE: Austin Chidi FELIX, Dorothy Ify Felix, Debtors.

Case No. 15–50016

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

January 23, 2017

Austin Chidi Felix, Reynoldsburg, OH, pro se.

Mina Nami Khorrami, Mina Nami Khorrami, LLC, Columbus, OH, Harry Wright, Columbus, OH, for Debtors.

## MEMORANDUM OPINION AND ORDER SUSTAINING TRUSTEE'S OBJECTION TO DEBTORS' HOMESTEAD EXEMPTION, AND ORDER REGARDING ADMINISTRATION OF ESTATE (DOC. NO. 13)

Judge Caldwell

This Memorandum Opinion and Order serves as the Court's findings of fact and conclusions of law for an Objection to Exemptions filed by Clyde C. Hardesty (Trustee), and a Response filed by Austin Chidi Felix and Dorothy Ify Felix (Debtors). Based upon the pleadings, testimony and exhibits, the Court finds and concludes the Trustee has sustained his burden of proof, and Debtors are not entitled to the claimed exemption.

Initially, while both Debtors have been active in this case, Mrs. Felix appears to be the most knowledgeable, and indeed the guiding force in their financial endeavors.

By contrast, Mr. Felix's testimony shows a lack of knowledge and understanding of the Debtors' financial affairs. As a result, the Court focused primarily upon Mrs. Felix's testimony in preparing this Opinion. In addition, the complexity of Debtors' finances makes it necessary to discuss a broad range of factors and pre-filing history.

The Debtors' story begins with their emigration from Africa, as early as 1984. Mrs. Felix resided in Maryland from 1988 to 1999, and she still has family living that State. Mrs. Felix moved to Reynoldsburg, Ohio in 1999, and registered to vote here on April 7, 2003. She and Mr. Felix married, and now have six children.

Mrs. Felix is a licensed LPN in Ohio, and based upon this skill, Debtors incorporated City Medical Nursing Center, LLC on June 2, 2003. It is located at 5340 E. Main Street, Ste. 209, Columbus, Ohio 43213. This entity remains active to this date, and provides home health nursing services. Evidently, the business thrived, and on December 7, 2004, Debtors purchased a house located at 973 Mueller Drive, Reynoldsburg, Ohio 43068 (Ohio house). It is 4,304 sq. ft., including five bedrooms, four baths, and an attached garage. The purchase price was $321,500.00, with $5,000.00 down, and originally there was a 30–year mortgage.

The Debtors prospered, and paid extra mortgage payments. As a result, four years later, Well Fargo Home Mortgage recorded a Certificate of Satisfaction on the Ohio house (September 15, 2008). Then ten months later, on July 17, 2009, Debtors purchased for $651,815.00, an additional house located at 14700 Elberfeld Court, Upper Marlboro, Maryland 20774 (Maryland house). It is 4,607 sq. ft., including four bedrooms, three and a half baths, with an attached garage.

To finance this purchase, Debtors executed an "Affidavit of Grantees As First–Time Maryland Home Buyers" stating in relevant part they, "will occupy the property as Grantee's principal residence". Simultaneously, Debtors signed a "Homeowner's Certification Of Principal Residence" stating, "(We) certify under penalties of perjury, that . . . (we are) the homeowner(s) of the following property and will occupy the property as . . . (our) principal residence. . ." In addition, Debtors certified, "The above Property Address has been . . . our 'Principal Residence' since July, 2009. Finally, this same document required Debtors to certify the number of months they, "have resided or expect to reside at the address each year", and the Debtors marked "12". That same year, Mrs. Felix obtained a Maryland driver's license and opened a bank account. The following year, on April 23, 2010, Mrs. Felix registered to vote in Maryland.

A little more than two years later, on December 31, 2012, the Debtors sold a "City Medical Nursing Services, LLC". The purchaser was their 22–year old Son, Brian Felix. The purchase price was $1,000.00. To complete the transaction, Debtors and Brian Felix executed a "Bill of Sale" that contains inconsistencies and errors sufficient to fill a hefty law school textbook.

After this sale and between 2013 and 2015, Mrs. Felix tried to start a home nursing services enterprise in Maryland, but could not obtain a nursing license for that State. According to her, Maryland placed a moratorium on the establishment of home nursing service businesses. During this period, Debtors formed two entities and registered one trade name in Maryland and the District of Columbia. They include: **a.** City Medical Nursing Care

Services, Inc., 2010 Rhode Island Avenue, Second Floor, Washington, D.C. 20018, on February 26, 2013; **b.** City Medical Nursing Care Services (trade name), 14700 Elberfeld Court, Upper Marlboro, Maryland 20774, on May 2, 2013; and **c.** City Medical Nursing Care Services, LLC, 14700 Elberfeld Court, Upper Marlboro, Maryland 20774, on August 6, 2013.

However, during the flurry of new enterprises and houses in Ohio, Maryland, and the District of Columbia, Debtors neglected to pay their taxes. Consequently, Debtors made it to our doorstep on January 2, 2015, filing under Chapter 7 of the United States Bankruptcy Code (Code). Debtors claimed on Schedule C, a $265,800.00 homestead exemption for the Ohio house, under Ohio Revised Code § 2329.66(A)(1). On the Statement of Intent, Debtors disclosed that they planned to surrender the Maryland house, but retain the Ohio house, and reaffirm any debt on that Property.

According to Debtors' Schedule A, there was no mortgage on the Ohio house, valued at $279,700.00. Debtors' Schedule A valued the Maryland house at $532,300.00, and disclosed a $647,418.40 mortgage. Debtors' Schedule D showed that the Internal Revenue Service (IRS) levied two tax liens against the Ohio house—one for $145,122.03 and the other for $264,887.12. Debtors' Schedule I indicates that Mr. Felix is an office manager for a "City Medical Nursing Services". Schedule I includes Mrs. Felix as the "Administrator" for the same entity. However, according to Schedule I, neither of the Debtors earned wage income, which is in conflict with tax returns presented at trial. In the original Statement of Financial Affairs Debtors listed having an interest in City Medical Nursing Center, LLC.

During the creditors' meeting conducted on February 10, 2015, Ms. Felix testified that her family did not intend to stay in the Ohio house because of the IRS liens. Specifically, Mrs. Felix testified, "No...the IRS have...put everything on the house. They ...say we owed them ... almost a million dollars and they put a lien on it. So we not staying there." At that same time, Mrs. Felix testified that she moved to Maryland and was commuting to Ohio, "(b)ecause with my job I could do it online exactly what I do and then I stayed in Maryland because I really wanted to leave Ohio." Debtors' first bankruptcy attorney, Phillip Gerth, (Mr. Gerth), corroborated Mrs. Felix's testimony at the meeting of creditors by volunteering that, "The plan is to hopefully offer the house in Ohio as an ...(offer) of compromise to the IRS. Hope it clears it. And then hope they (Debtors) can do a loan modification in Maryland...Then they're going to move there. ...That's the master plan."

Next, Mrs. Felix testified during a Bankruptcy Rule 2004 examination conducted on May 15, 2015, that she was working too hard in the Ohio business, no longer enjoyed that business, and wanted to do something else. In addition, Mrs. Felix testified that she hired a broker to sale the business, to no avail. Mrs. Felix also testified she only returned to Ohio to help her son Brian Felix with the business, but wanted to be in Maryland near her family. Finally, Mrs. Felix at that time testified their older daughter is in Maryland, while the other children remain in Columbus.

On March 7, 2015, the Trustee filed the present exemption objection, contending that at the time of the bankruptcy filing, Maryland rather than Ohio was Debtors' domicile. After the bankruptcy filing, the Debtors listed the Ohio house for sale without the Trustee's permission, but never tried to market the Maryland house. Debtors responded to the Trustee's ex-

emption objection on March 31, 2015. Their answer is less challenge and more revelation. For their Counsel, Mr. Gerth wrote:

> However, the Debtors identified (during the creditors' meeting) that they lived in Ohio, produced Ohio driver's licenses, testified that they had a failed Ohio business, and otherwise credibly testified that they lived in Ohio, and had lived in Ohio. They testified that they would like to eventually move to Maryland when the case was over, but they identified as currently being Ohio residents. Debtors claimed Ohio exemptions in their real estate, but it should be noted that the IRS also claims several massive federal tax liens on the Ohio property, which would make it impossible and/or impractical for the Trustee to claim an interest in the property, even if the objection were granted. (emphasis supplied).

After the Trustee opposed Debtors' exemption claim, he discovered that the IRS recorded the tax liens on the Ohio house in the wrong county (Franklin as opposed to Licking County). The Debtors, as well as Mr. Gerth, were unaware of this error at the time of the bankruptcy filing. As a result, since the lender on the Ohio house released its interest, there are no valid liens on the Property. According to the Debtors, they first discovered this fact by receiving a phone call from Mr. Gerth while they were driving to Maryland. In that conversation he told them that the Trustee proposed settling the exemption dispute for $25,000.00.

On May 14, 2015, the Debtors testified at a Bankruptcy Rule 2004 Examination, and the following day Debtors filed an Amended Statement of Financial Affairs. In this Document, Debtors disclosed interests in three additional business entities. Less than a month later, on June 3, 2015, Mr. Gerth filed a Motion to Withdraw. He referred to non-payment and strategic differences. As a result, Debtors' retained, their second bankruptcy counsel, Harry Wright, IV (Mr. Wright). He filed an appearance on July 1, 2015.

The Court conducted initial hearings on the Trustee's exemption objection on September 30, 2015, and continued the hearing to November 16, 2015. Given deficient information in Debtors' bankruptcy documents, particularly undisclosed business entities, the Court directed Debtors to amend their Schedules and Statement of Financial Affairs on or before October 20, 2015. They complied, and on this round disclosed a total of ten entities, seven in Ohio and three in Maryland. However, during a pretrial conference conducted on January 11, 2016, the Court learned that the Amendments were still not comprehensive. Consequently, the Court entered another order on January 14, 2016, requiring amendments by February 9, 2016. The Debtors complied in a timely manner, and disclosed seventeen entities, including ten in Ohio, six in Maryland, and one in the District of Columbia.

Then on March 2, 2016, Debtors' third bankruptcy attorney, Mina Nami Khorrami (Ms. Khorrami), filed a notice of appearance as co-counsel along with Mr. Wright. As a result, on April 29, 2016, Debtors filed their Fourth Amendment to the Statement of Financial Affairs. On this final round, the number of entities, registered trade names and non-profits grew from seventeen to twenty, including five in Maryland, one in the District of Columbia, and fourteen in Ohio.

Before detailing the Court's conclusions of law, four observations provide context. First, the exemption litigation took several trial days, involved multiple amendments to bankruptcy schedules and statements of affairs, conflicting testimony, and three different bankruptcy attorneys. Second,

over the last decade, Debtors have resided in and commuted between two houses, one in Ohio and the other in Maryland. In addition, they have formed numerous corporate entities and non-profits, and registered multiple trade names in Ohio, Maryland and the District of Columbia.

Third, many of the entities' names are confusing, as they contain varying portions of the titles of others, along with similar addresses. In addition, the Debtors are inconsistent in their use of names to identity their various enterprises in documents, and even their testimony. The Court remains unconvinced that the Debtors are even aware of, and have completely disclosed all their enterprises.

Fourth, over the years the Debtors have generated income sufficient to purchase two houses—one in Ohio and the other in Maryland—with a combined scheduled value of $812,000.00. This is in addition to personal property valued at $10,801.70, for a grand total of $822,801.70 in assets. Simultaneously, the Debtors scheduled secured, priority and general unsecured debt in the total amount of $1,486,262.85. On June 24, 2015, the IRS filed an Amended Proof of Claim for $725,513.81.

Now, turning to a discussion of the present legal issue, the Court must decide whether it should sustain the Trustee's Objection to Debtors' claim of a homestead exemption on the Ohio house. Primarily, exemptions are an exception to the statutory obligation of bankruptcy trustees to liquidate and distribute all property of the estate. Courts liberally apply exemptions to provide debtors with a fresh start in life, which remains one of the fundamental goals of bankruptcy. 11 U.S.C. §§ 541(a)(1) and 704(a)(1). *In re Felgner*, 2011 WL 5056994 at *1–2 (Bankr. N.D Oh. 2011).

Debtors claim exemptions, as prescribed in Section 522(b)(1) of the Code, unless a given state elects to create their own. 11 U.S.C. § 522(b)(2). The objecting party carries the burden of proof by preponderance of the evidence. FRBP 4003(c); *In re Wengerd*, 453 B.R. 243, 246 (6th Cir. BAP 2011). In states like Ohio, that have elected to enact separate exemptions, they are only available to debtors who at the time of filing established domicile in that state during the preceding 730 days. 11 U.S.C. § 522(b)(3)(A); *In re Felgner* at *2; Ohio Rev. Code § 2329.66(A); *In re Aubiel*, 516 B.R. 476, 481 (Bankr. N.D. Ohio 2014) *aff'd*, 534 B.R. 300 (6th Cir. BAP 2015).

Domicile is a combination of physical presence, along with the intent to remain permanently in the chosen location. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989). Once established, "a person may be absent from their domicile for long periods of time without losing it, so long as a new domicile is not acquired." *In re Burns*, 218 B.R. 897, 899 (Bankr. N.D. In. 1998). On the other hand, residence is "a person's dwelling place or place of habitation." *In re Jones*, 397 B.R. 765, 770–71 (Bankr. D.S.C. 2008). Indeed, residence may be at one place, while domicile is at another. *State ex rel. Flaugher v. Rogers et al.*, 226 Ind. 32, 77 N.E.2d 594, 595 (1948).

In cases like this where domicile is in question, courts try to determine the subjective intent of debtors. *Donald v. Curry (In re Donald)*, 328 B.R. 192, 203 (9th Cir. BAP 2005). In this endeavor, courts consider subjective statements of debtors, as well as objective factors. *In re Vaughan*, 188 B.R. 234, 237 (Bankr. E.D. Ky. 1995); In *re Porvaznik*, 456 B.R. 738, 740 (Bankr. M.D. Pa. 2011). Yet, courts may discount subjective statements as self-serving, or if inconsistent with objective facts. *District of Columbia v. Murphy*, 314

U.S. 441, 456, 62 S.Ct. 303, 86 L.Ed. 329 (1941).

The trial testimony of the Debtors offers a different take on the domicile issue, compared to that given during the creditors' meeting and Bankruptcy Rule 2004 examination, including the statements of their initial bankruptcy attorney, Mr. Gerth. In addition, the Debtors offered at trial testimony of their Ohio and Maryland neighbors (Mrs. Cassandra Williams and Mr. Reginald Harrison, respectively), and their pastor (Bishop Anthony Osuobeni). In these witnesses, the Debtors seek to confirm Ohio as their domicile.

Regarding Mrs. Williams, she testified that her family moved to the same street of the Debtors' Ohio house in 2005, and she has known them since 2006, when both families enrolled children in the same preschool. The two families socialized, and both attended the Westerville, Ohio location of the Vineyard Church. Mrs. Williams testified that she sees the Debtors at the Ohio house at least every other week, and that as far as she knows Ohio is the Debtors' home. Mrs. Williams testified, however, that the Debtors told her they purchased the Maryland house, but she has no knowledge of the amount of time they spend there.

Next Mr. Harrison, Debtors' Maryland neighbor, also lives on the same street as the Debtors. He met them in 2010, when his family moved to the neighborhood. Mr. Harrison testified that the Debtors infrequently occupy the Maryland house, and it appears vacant from the street, due to the lack of lighting, un-cleared snow, and the unkempt lawn (lack of consistent mowing and raking). Mr. Harrison testified, however, that the Debtors expressed an intent to live permanently in Maryland, once they were able to transition their business interests to that State. Mr. Harris testified that he has been inside the Maryland house only two or three times. Yet, he has never ventured further then the Debtors' dining room table, and does not know whether the balance of the house is furnished. The parties offered no photographic evidence of its contents.

Finally, Bishop Osuobeni is the Senior Pastor of New Season Assembly located on Cleveland Avenue, in Columbus Ohio. The Bishop testified that he has known the Debtors since 2002 when he emigrated from Africa. In addition, Bishop Osuobeni testified that he has visited the Debtors' Ohio house several times, and testified the Debtors lived there during 2013–14. The Bishop further testified that Mr. Felix works with youth at the Church, and that the Felix children are involved as well. Bishop Osuobeni testified that he was aware the Debtors traveled to Maryland to expand their business, and that the Debtors were in Columbus two to three weeks per month.

In addition to these three witnesses, the Court also heard trial testimony from the Debtors' initial bankruptcy attorney, Mr. Gerth. He testified that he first met the Debtors in 2007, as they were neighbors in the same office building. Mr. Gerth started representing them in May of 2008, on matters related to their business, including a malpractice action against their former accountant. He testified that as clients the Debtors lack organization, cannot find documents, and will not listen to advice. Indeed, Mr. Gerth testified that his paralegal, Mitch Muskin, volunteered to help the Debtors organize their business, but quit based upon frustration with their failure to listen and take advice.

Regarding filing bankruptcy, the Debtors first contacted Mr. Gerth in August of 2014. At the time of filing, Mr. Gerth was aware of the sale of the business to the Debtor's son. However, Mr. Gerth testified

that he did not prepare the sale agreement. Further, Mr. Gerth testified that he first learned of the other businesses in Ohio and Maryland only after the bankruptcy filing, including during the Bankruptcy Rule 2004 Examination.

Regarding domicile, during the meeting of creditors conducted on February 10, 2015, Mr. Gerth volunteered in response to questioning of Erik Van Bramer from the United States Trustee's Office, "The plan is to hopefully offer the house in Ohio as an … (offer) of compromise to the IRS. Hope it clears it (outstanding tax debt). And then hope they (Debtors) can do a loan modification in Maryland…Then they're going to move there…That's the master plan." In response to a question from the Trustee to Mrs. Felix regarding retaining the Maryland house, Mr. Gerth interjected, "If we can work it out."

What to make of all this. Truly, the hallmark of this case is the tardy disclosure of an intricate organization that defies all explanation of necessity. It does not appear that the Debtors have been responsive to legal advice and offers of assistance in the organization of their business affairs, even for purposes of trial to protect their own interests. Whether by design or sheer happenstance, the Debtors have created a muddle, when at its core there is really only one disclosed source of income-the Ohio entity they sold their Son. Consequently, Debtors' credibility in providing complete and candid answers suffers.

From this tangle, the Court has reached two primary conclusions. First, on the date of the bankruptcy filing, the Debtors wanted and indeed planned to move to Maryland. Mrs. Felix had family there, and she had grown tired of the business in Ohio, and planned to start new endeavors. To this end, Debtors purchased a 4,607 sq. ft. house in Upper Marlboro, Maryland for $651,815.00. To obtain financing for this purchase, Debtors both swore that they would reside in the Maryland house, as their principal residence-12 months of the year.

Mrs. Felix physically moved to Maryland along with her older daughter, at least partially furnished the house, and registered to vote in Maryland. In addition, Mrs. Felix obtained a Maryland driver's license and opened a bank account there. Regarding Mr. Felix, he remained primarily in the Ohio house, with the minor children still in school. However, the evidence presented by the Trustee and the Debtors demonstrate both of the Debtors frequently commuted between the Maryland and Ohio houses, and conducted routine daily activities in both States. In addition, the three witnesses offered by the Debtors, expressed awareness of the Maryland house and businesses, Debtors' commute between Ohio and Maryland, and Debtors' desire to permanently move to Maryland.

Corroboration of the Debtors' intent to take Maryland as their domicile includes the six entities and registered trade names Debtors formed in Maryland, and the District of Columbia between the years 2005 and 2013. They are:

1.  On December 20, 2005, Debtors registered a trade name in Maryland: My Sisters Place, 5804 Annapolis Rd., Bladensburg, Maryland 20710;

2.  On March 16, 2006, Debtors formed a Maryland home nursing services agency known as City Medical Home Health Nursing Services, Inc., 6809 Woodstream Drive, Lanham, Maryland 20706;

3.  On April 7, 2009, Debtors formed a Maryland home nursing services agency: City Medical Home Health Nursing Services, Inc., 14700 Elberfeld Court, Upper Marlboro, Maryland 20774;

708

4. On February 26, 2013, Debtors formed City Medical Nursing Care Services, Inc., 2010 Rhode Island Avenue, Second Floor, Washington, D.C. 20018;

5. On May 2, 2013, Debtors registered the trade name of City Medical Nursing Care Services, 14700 Elberfeld Court, Upper Marlboro, Maryland 20774; and

6. On August 6, 2013, Debtors formed City Medical Nursing Care Services, LLC, 14700 Elberfeld Court, Upper Marlboro, Maryland 20774.

In addition, two years prior to filing bankruptcy, Debtors sold City Medical Nursing Services, LLC to their Son Brian Felix for $1,000.00 (December 31, 2012). Unfortunately, Mrs. Felix tried unsuccessfully to start a home health nursing services business in Maryland. According to her testimony, Maryland placed a moratorium on home health nursing service businesses. Mrs. Felix and Debtors' initial bankruptcy attorney, Mr. Gerth, both confirmed that the "plan" was to submit an offer of compromise to the IRS based upon the equity in the Ohio house. There was no mortgage, but substantial tax liens. Then Debtors would try to obtain a loan modification to retain the Maryland house.

Second, at the time of the bankruptcy filing, the creditors' meeting and Bankruptcy Rule 2004 Examination, the Debtors and Mr. Gerth were all unaware that the IRS recorded their tax liens in the wrong county. They only learned this fact after the Trustee objected to their attempt to exempt the Ohio house. After made aware of this recording error, the Debtors changed their professed housing plans, as of the date of the filing, to keep the Ohio house. The Court finds and concludes that this change in heart is a tactic to shield a valuable asset, rather than a valid assertion of domicile.

For all these reasons, the Court SUSTAINS the Trustee's Objection to Debtors' homestead exemption.

THE COURT FURTHER ORDERS that the Trustee forthwith proceed to sell the Ohio house, and distribute the proceeds in accordance with this Memorandum Opinion and Order. The Debtors shall fully cooperate with the Trustee in the sale of the Ohio house. If there is any failure to do so, the Court GRANTS leave for the Trustee to file an appropriate motion with this Court.

IT IS SO ORDERED.