RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18b0005p.06

# BANKRUPTCY APPELLATE PANEL

OF THE SIXTH CIRCUIT

_____

In re:  AUSTIN CHIDI FELIX; DOROTHY IFY FELIX,

*Debtors.*    No. 17-8004

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio at Columbus.
No. 15-50016—Charles M. Caldwell, Judge.

Decided and Filed:  April 6, 2018

Before: DELK, HARRISON, and WISE, Bankruptcy Appellate Panel Judges.

_____

### COUNSEL

_____

**ON BRIEF:**  Nancy Ashbrook Willis, LAW OFFICE OF NANCY ASHBROOK WILLIS, Mount Vernon, Ohio, for Trustee.  Austin Chidi Felix, Dorothy Ify Felix, Reynoldsburg, Ohio, pro se.

_____

### OPINION

_____

MARIAN F. HARRISON, Bankruptcy Appellate Panel Judge. This appeal concerns the bankruptcy court's order denying Austin and Dorothy Felix's (collectively "debtors," individually  Mr./Mrs. Felix) homestead exemption based on its finding that the debtors were not domiciled in Ohio for the 730 days required by 11 U.S.C. § 522(b)(3)(A) before they filed their bankruptcy petition.  Because the bankruptcy court's interpretation of the facts was not clearly erroneous, its ruling is affirmed.

**ISSUES ON APPEAL**

1. Whether this appeal should be dismissed because the debtors' brief was filed one day late and does not comport with the formatting requirements.

2. Whether the bankruptcy court erred in refusing to admit certain evidence offered by the debtors.

3. Whether the bankruptcy court erred in determining that the debtors were not entitled to claim the Ohio Homestead Exemption in their property located in Ohio because they were not domiciled in Ohio for the 730 days prior to filing their bankruptcy petition.

**JURISDICTION**

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Southern District of Ohio has authorized appeals to the Panel, and none of the parties have timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citation omitted). A bankruptcy court's order denying a claim of exemption is a final, appealable order. *Menninger v. Schramm* (*In re Schramm*), 431 B.R. 397, 399 (B.A.P. 6th Cir. 2010) (citation omitted).

**STANDARDS OF REVIEW**

Conclusions of law are reviewed *de novo*. *Mediofactoring v. McDermott* (*In re Connolly N. Am., LLC*)*, 802 F.3d 810, 814 (6th Cir. 2015) (citations omitted); *Isaacs v. DBI-ASG Coinvester Fund III, LLC* (*In re Isaacs*), 569 B.R. 135, 139 (B.A.P. 6th Cir. 2017) (citation omitted). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v.*

*Accredited Home Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007) (citation omitted).

On the other hand, "[f]indings of fact . . . must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6); *see In re Aubiel*, 534 B.R. 300, 302 (B.A.P. 6th Cir. 2015); *Lester v. Storey* (*In re Lester*), 141 B.R. 157, 160 (S.D. Ohio 1991). "Factual findings are clearly erroneous only when the reviewing court 'is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Ray*, 803 F.3d 244, 265 (6th Cir. 2015) (quoting *United States v. Navarro-Camacho,* 186 F.3d 701, 705 (6th Cir. 1999)). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S. Ct. 1504, 1511 (1985) (citations omitted).

A dispute regarding domicile, as in the present case, is generally considered as a mixed question of law and fact. *Morad v. Xifaras* (*In re Morad*), 323 B.R. 818, 822 (B.A.P. 1st Cir. 2005) (citations omitted). *See also Ku v. Brown* (*In re Ku*), No. AZ-16-1174-BJuL, 2017 WL 2705301, at *3 (B.A.P. 9th Cir. June 21, 2017) (citations omitted) ("Domicile premised upon intent and presence involves mixed questions of law and fact[.]"). As the Supreme Court recently observed, "[m]ixed questions are not all alike" — those that rest primarily on the facts are reviewed for clear error and those that rest primarily on the law are reviewed *de novo. U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge, LLC*, No. 15-1509, 2018 WL 1143822, at *5 (U.S. Mar. 5, 2018). "[T]he standard of review for a mixed question all depends—on whether answering it entails primarily legal or factual work." *Id.*

"The bankruptcy court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *Lebovitz v. Hagemeyer* (*In re Lebovitz*), 360 B.R. 612, 615-16 (B.A.P. 6th Cir. 2007) (citation omitted). "'A court abuses its discretion when it commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact.'" *Gourlay v. Sallie Mae, Inc.* (*In re Gourlay*), 465 B.R. 124, 126 (B.A.P. 6th Cir. 2012) (quoting *Auletta v. Ortino* (*In re Ferro Corp. Derivative Litig.*), 511 F.3d 611, 623 (6th Cir. 2008)). Where an objection to the admission of

evidence is not raised at the trial court level, however, the standard of review is plain error. *United States v. Olano*, 507 U.S. 725, 733, 113 S. Ct. 1770 (1993). To prove that a lower court made a plain error in admitting evidence, the party who failed to object must show (1) an error (2) that is "clear or obvious," (3) that affected the party's "substantial rights," and (4) that "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135, 129 S. Ct. 1423 (2009) (internal quotations omitted).

**FACTS**

The debtors filed their chapter 7 bankruptcy petition in the Southern District of Ohio on January 2, 2015. On Schedule A, the debtors listed two properties: 973 Mueller Drive, Reynoldsburg, Ohio ("Ohio Home") and 14700 Elberfeld Court, Upper Marlboro, Maryland ("Maryland Home"). The debtors listed the Ohio Home as their residence, and on Schedule C, the debtors claimed a $265,800 homestead exemption pursuant to Ohio Revised Code Ann. § 2329.66(A)(1). On their Statement of Intent, the debtors asserted their intent to retain the Ohio Home and surrender their Maryland Home.

During the 11 U.S.C. § 341 Meeting of Creditors ("§ 341 Meeting") held on February 10, 2015, the debtors informed the chapter 7 trustee ("Trustee") of their desire to move to Maryland and indicated they had been commuting between Ohio and Maryland. The debtors stated that they previously owned a home health care business in Ohio. They sold that business to their son several years prior to filing bankruptcy but continued to help him manage the business. The debtors attempted to start a similar business in Maryland but were unsuccessful. When questioned, Mrs. Felix gave confusing responses as to where she currently lived and where the family intended to live. The debtors' attorney at the time stated the debtors' intent to "offer the house in Ohio as an . . . [offer] of compromise to the IRS. . . . [D]o a loan modification in Maryland. . . . Then [the debtors are] going to move there. . . . That's the master plan." (§ 341 Meeting Tr. at 23:24-24:7). Mrs. Felix testified that the debtors would not stay in the Ohio Home because of the IRS' tax lien. (*Id.* at 22:6-13). When asked if the Maryland Home was ever a residence, Mrs. Felix answered "I stayed there a lot." (*Id.* at 22:24-23:1). When asked further about living in both places, Mrs. Felix answered "I moved to Maryland. . . . I was commuting . . . . I really wanted to leave Ohio." (*Id.* at 23:5-14). In a follow-up question, Mrs. Felix was

asked about plans for the family to move and responded: "Yes, they were going to meet us in Maryland but the house in Maryland is in foreclosure at this point, so." (*Id.* at 23:17-22). At that point, the debtors' attorney interrupted and stated: "The plan is to hopefully offer the house in Ohio as an [offer] of compromise to the IRS. Hope it clears it. And then hope [the debtors] can do a loan modification in Maryland. . . . Then they're going to move there. . . . That's the master plan." (*Id.* at 23:24-24:7).

Following the initial § 341 Meeting, the Trustee objected to the debtors' homestead exemption in the Ohio Home, arguing that it was not their domicile during the 730 days immediately preceding their chapter 7 filing (i.e., from January 2, 2013, through January 2, 2015). The Trustee argued that the debtors' domicile was located at the Maryland Home during the relevant period. The debtors filed a response to the objection, noting that "they would like to eventually move to Maryland when the case was over, but they identified as currently being Ohio residents." (Debtors' Resp. at 1, March 31, 2015, Case No. 15-50016, ECF No. 16). The Ohio homestead exemption is preferable, as it permits each debtor to claim a $132,900[1] exemption in a primary residence, or $265,800 for a joint bankruptcy case, whereas Maryland limits the exemption to $6,000, and that amount may not be claimed by both a husband and wife in the same bankruptcy proceeding. *See* Ohio Rev. Code Ann. § 2329.66(A)(1)(b) and Md. Code Ann., Cts. & Jud. Proc. § 11-504(f)(1)(i)(2)(A) and (f)(3).

After the objection and response were filed, the Trustee took Rule 2004 examinations of the debtors, and the bankruptcy court heard five days of testimony on the Trustee's objection to the debtors' homestead exemption. Prior to the first and second hearings, the parties stipulated to a number of facts. On January 23, 2017, the bankruptcy court entered an order sustaining the Trustee's objection to exemption. On February 6, 2017, the debtors timely filed a notice of appeal of the order sustaining the Trustee's objection to exemptions.

---

[1]Ohio law permits an adjustment of the exemption amount on the first day of April in each third calendar year after 2010. At the time the debtors filed their bankruptcy case, the homestead exemption amount in Ohio was $132,900. *See* Ohio Judicial Conference, http://www.ohiojudges.org/Document.ashx?DocGuid=c6a5f473-62f4-4466-9e4f-aaf7b59c1b66 (last visited March 27, 2018).

## DISCUSSION

### Timeliness of Debtors' Appellant Brief

As a preliminary matter, the Trustee asserts that this appeal should be dismissed because the debtors' brief was filed one day late and "fails to comply with nearly all briefing requirements set out in Fed. R. Bankr. P. 8014(a)." (T'ee Br. at 4). Indeed, the debtors' brief was filed one day late and does not comport with the format generally required.

While the Panel has authority to dismiss an appeal for failure to comply with briefing requirements, the Sixth Circuit favors adjudication on the merits, *see, e.g., Little v. Yeutter*, 984 F.2d 160, 162 (6th Cir. 1993), and has cautioned that dismissal "is a harsh sanction which the court should order only in extreme situations showing 'a clear record of delay or contumacious conduct by the plaintiff.'" *Carver v. Bunch*, 946 F.2d 451, 454 (6th Cir. 1991) (quoting *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980)). *See also Island Creek Coal Co. v. Local Union No. 1827 of United Mine Workers of Am.,* 568 F.2d 7, 8 (6th Cir. 1977) (holding that dismissal was not warranted on the ground that appellant's designation of the record on appeal was incomplete where appellees were neither misled nor prejudiced by appellant's error, and there was no evidence that appellant's omission was made in bad faith).

The Trustee has not asserted that the debtors acted in bad faith, nor has he articulated any prejudice resulting from the debtors' late brief or from its formatting. In fact, the Trustee's brief reflects that he was able to ascertain the debtors' arguments from their brief. Therefore, the Panel will not dismiss the appeal as a sanction for the one-day tardiness or the failure to follow briefing guidelines.

### Evidentiary Issues

The Trustee also raises objections to the "exhibits" attached to the debtors' appellate brief. The Panel only considered the actual trial exhibits made part of the record on appeal. Accordingly, to the extent the debtors improperly attached exhibits to their brief, it is harmless error.

The debtors assert that the bankruptcy court erred by not admitting Exhibit Q, a letter from Chase Bank dated November 20, 2015, and Exhibit R, a notice of non-compliance from the

Maryland Home Owners Association. The bankruptcy court denied admission of both because they did not relate to the relevant 730-day period. The bankruptcy court's denial of admission of these exhibits was not an abuse of discretion. The debtors also argue that the admission of Exhibit 60, the assignment of mortgage to Chase Bank, and Exhibit 42, the loan closing file for the Maryland Home, was prejudicial because they were outside the relevant time period. The debtors' argument fails because Exhibit 60 was admitted by stipulation and Exhibit 42 was admitted without objection, and the debtors have not established that it was plain error to admit Exhibit 42. *United States v. Clements*, 590 Fed. App'x 446, 449 (6th Cir. 2014) ("[A] party who fails to object to the introduction of evidence may seek plain-error review of the forfeited objection.").

## Domicile

As stated earlier, a dispute regarding domicile is generally considered as a mixed question of law and fact. *In re Morad*, 323 B.R. 818, 822 (citations omitted). The determinative issue in the present case is whether the bankruptcy court correctly held that the debtors were domiciled in Maryland rather than Ohio for the 730 days prior to the date of the bankruptcy petition. *See* 11 U.S.C. § 522(b)(3)(A). The legal standard for determining domicile is well settled, and the bankruptcy court's decision rests primarily on applying that standard to the facts of this case. In other words, the bankruptcy court was compelled "to marshal and weigh evidence," and "make credibility judgments," and therefore, the decision is reviewed for clear error. *U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge, LLC*, 2018 WL 1143822, at *5. The Panel holds that the bankruptcy court's decision was not clearly erroneous.

The filing of a bankruptcy petition under chapter 7 of the Bankruptcy Code creates a bankruptcy estate. Under 11 U.S.C. § 541(a)(1), "property of the estate" is defined as "all legal or equitable interests of the debtor in property as of the commencement of the case[.]" Pursuant to 11 U.S.C. § 522(b), a debtor may exempt certain property from the bankruptcy estate. A debtor may claim federal exemptions set forth in 11 U.S.C. § 522(d) unless the applicable state has opted out of the federal exemptions and created its own exemptions. 11 U.S.C. § 522(b)(2). To claim state-enacted exemptions, the debtor must be domiciled in that state for the 730 days

immediately preceding the date they file the petition.**[2]** 11 U.S.C. § 522(b)(3). At the time the debtors filed their petition, they claimed the Ohio homestead exemption. *See* Ohio Rev. Code Ann. § 2329.66(A)(1)(b). The Trustee objected to the exemption, asserting that the debtors were not domiciled in Ohio for the 730 days prior to filing their petition.

"A person may have two or more residences but only one domicile." *In re Acor*, 510 B.R. 588, 592 (Bankr. W.D. Tenn. 2014) (quoting *In re Gurley*, 215 B.R. 703, 708 (Bankr. W.D. Tenn. 1997)) (additional citations omitted). "A domicile is distinguished from a residence by the permanency and scope of a party's presence at either location. It is the place where a person dwells and which is the center of his domestic, social, and civil life." *Bateman v. E.I. DuPont De Nemours & Co.*, 7 F. Supp. 2d 910, 912 (E.D. Mich. 1998) (internal quotation marks, citation, and emphasis omitted). Bankruptcy courts in the Sixth Circuit use a test, derived from the Supreme Court, to determine domicile:

> No single factor can conclusively establish domicile. Instead, to determine the domicile of a debtor, a court must evaluate all of the circumstances of the case. *Galva Foundry Co. v. Heiden*, 924 F.2d 729 (7th Cir. 1991). Among the factors to be considered in evaluating the situs of a debtor's domicile are: (1) the location of the current residence; (2) voting registration and voting practices; (3) location of spouse and family; (4) location of personal or real property; (5) location of brokerage and bank accounts; (6) memberships in churches, clubs, unions and other organizations; (7) location of a person's physician, lawyer, accountant, dentist and stockbroker; (8) place of employment or business; (9) driver's license and automobile registration; and (10) payment of taxes. *District of Columbia v. Murphy*, 314 U.S. 441, 455–58, 62 S. Ct. 303, 309–11, 86 L. Ed. 329 (1941).

*In re Felgner*, No. 11-32274, 2011 WL 5056994, at *2 (Bankr. N.D. Ohio Oct. 24, 2011); *see also In re Aubiel*, 534 B.R. 300, 307 (applying test from *Felgner*).

In deciding that the debtors' domicile was in Maryland, the bankruptcy court applied the correct legal standards. Specifically, the bankruptcy court ruled that "[d]omicile is a combination of physical presence, along with the intent to remain permanently in the chosen location . . . . On the other hand, residence is a person's dwelling place or place of habitation."

---

**[2]**If a debtor has not had the same domicile for 730 days immediately preceding the filing, the Bankruptcy Code requires looking at the 180 days prior to that. 11 U.S.C. § 522(b)(3). If the domicile has not been the same for the full 180 days then the Bankruptcy Code allows a debtor to use state or local law where the debtor was domiciled for the greater portion of the 180 days. *Id.*

*In re Felix*, 562 B.R. 700, 705 (Bankr. S.D. Ohio 2017) (internal quotations and citations omitted). The bankruptcy court explained that "a person may be absent from their domicile for long periods of time without losing it, so long as a new domicile is not acquired," *id.* (citation omitted), and recognized that "[t]he objecting party carries the burden of proof by preponderance of the evidence." *Id.* (citing Fed. Rule Bankr. P. 4003(c); *In re Wengerd*, 453 B.R. 243, 246 (B.A.P. 6th Cir. 2011)). Further, the bankruptcy court correctly undertook its obligation to find "the subjective intent of the debtors" using both "subjective statements of debtors, as well as objective factors." *Id.* (citations omitted).

The bankruptcy court's interpretation of the proof was not clearly erroneous. *See Anderson v. Bessermer City,* 470 U.S. 564, 574 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). As the debtors admitted and the bankruptcy court noted: "over the last decade, Debtors have resided in and commuted between two houses, one in Ohio, and the other in Maryland." *In re Felix* at 705. The debtors bought the Ohio Home in 2004, and lived there with at least five of their six children. The minor children attended Ohio public schools, and the debtors were charged owner-occupied property taxes on the Ohio property. Mrs. Felix had family in Maryland, and the debtors intended to open a business in Maryland and relocate there permanently. In furtherance of their plan to move, the debtors purchased the Maryland Home, a 4607 square foot house, for $651,815 in 2009. To obtain financing for the Maryland Home, the debtors executed a sworn affidavit as part of the mortgage process which stated that the home would be their primary residence for 12 months out of the year. Mrs. Felix physically moved to the Maryland Home, which was at least partially furnished, obtained a Maryland driver's license (although she does not drive), registered to vote in Maryland, and opened a bank account in Maryland. At least one of the debtors' adult children also moved into the Maryland Home and attended college in Maryland, while Mr. Felix and some of their children remained in Ohio. The minor children attended school in Ohio, and the family's regular physicians and churches were in Ohio during the relevant period. Both debtors frequently commuted back and forth between Maryland and Ohio. Routine daily activities occurred in both states, and even the debtors' witnesses testified regarding the existence of the Maryland Home and of the debtors' desire to move there permanently. In 2012, the debtors sold the Ohio business to their son but continued to work

there. The Ohio business remained the only source of the debtors' income. Between the years 2005 and 2013, the debtors formed six entities and registered trade names in Maryland and the District of Columbia; however, none of the debtors' attempts at starting a new business in Maryland were successful. The debtors' business and personal bank records showed regular debit transactions that occurred in both states.

When the debtors filed their bankruptcy petition in 2015, they claimed a homestead exemption in the Ohio Home, which they valued at $279,700. At the time, there was no mortgage on the Ohio Home but the Internal Revenue Service ("IRS") had levied two tax liens on the property, one for $145,122.03 and the other for $264,887.12. On their Statement of Intent, the debtors expressed their intent to surrender the Maryland Home, which they valued at $532,300. The Maryland Home had a mortgage of $647,418.40.

During the § 341 Meeting, Mrs. Felix and the debtors' original bankruptcy attorney confirmed that the debtors' actual plan was to submit an offer of compromise to the IRS based on the equity in the Ohio Home and seek a loan modification to retain the Maryland Home. At Mr. Felix's Rule 2004 Examination, he testified that the debtors physically moved to Maryland and occupied the Maryland Home even though they were coming back and forth to Ohio. At Mrs. Felix's Rule 2004 Examination, she testified that she lived at both houses, going back and forth, but usually stayed at the Maryland Home. It was only when the Trustee objected to the debtors' claimed exemption in the Ohio Home that the debtors learned the IRS had recorded its tax liens in the wrong Ohio county. After this revelation, the debtors' testimony changed. At trial, the debtors testified that they spent most of their time at the Ohio Home. Mrs. Felix testified that they only went to the Maryland Home every two and a half months, and the debtors' Maryland neighbor testified that he rarely saw them at the Maryland Home.

The bankruptcy court noted that "the hallmark of this case is the tardy disclosure of an intricate organization that defies all explanation of necessity" and that the "Debtors' credibility in providing complete and candid answers suffers." *In re Felix*, 562 B.R. at 707. The bankruptcy court concluded that once the debtors became aware of the recording error, they changed their professed housing plans and "that this change in heart is a tactic to shield a valuable asset, rather than a valid assertion of domicile." *Id*. at 708. The bankruptcy court's

finding regarding credibility is to be given great weight. *See Brock v. Hammonds* (*In re Triton Enters., Inc.*), 464 B.R. 62, 62 (B.A.P. 6th Cir. 2011) (unpublished table decision) (citations omitted) ("The bankruptcy court is in the best position to assess the testimony and credibility of witnesses.").

While one could reach either domicile conclusion from the evidence, this Panel must afford due deference to the bankruptcy court's assessment of the witnesses' credibility. Therefore, the bankruptcy court's domicile determination was not clearly erroneous. This conclusion is strengthened by the bankruptcy court's express findings regarding the debtors' credibility.

**CONCLUSION**

For the reasons stated, the bankruptcy court's order denying the debtors' Ohio homestead exemption is AFFIRMED.